Good morning, Your Honors. Good morning. Your name? May it please the Court, my name is Catalina Gracia and I represent the petitioner in this matter. I'd like to reserve two minutes for rebuttal. All right. The immigration judge's conclusion that the petitioner's credible testimony and evidence did not establish that he suffered past persecution or have a well-founded fear of future persecution was not supported by substantial evidence. First, in reaching such a finding, the immigration judge deviated from a totality of circumstances standard of analysis that resulted in an erroneous finding that petitioner was unable to demonstrate past persecution. Although in her decision, the immigration judge stated that neither of the two forms of harm petitioner claimed to have suffered rose to the level of persecution sufficient to warrant the grant of asylum, either separately or cumulatively, her analysis bifurcated the claims such that they were not analyzed in their totality. As found in Gouver's Oshcraft, a Ninth Circuit case from 2004, the Court looks at the totality of circumstances in deciding whether a finding of persecution is compelled. Further, in Corbelina v. Ins, a Ninth Circuit case from 1998, the Court held that, quote, the key question is whether looking at the cumulative effect of all the incidents a petitioner has suffered, the treatment he or she received rises to the level of persecution. What was the ground, the protected ground that was asserted by your client? What was the protected ground asserted by your client? An imputed political opinion. And what did the record show? I know the IJ didn't base the decision on it, but what did the record show as to why these threats came from the government, if you will? Well, the reason being that where the petitioner was employed, he worked for an electric company that was owned by the state, and so that was the basis for that. As I recall, his testimony was he assumed they must have come from, there wasn't any direct evidence that they came from a governmental source, was there? Correct, but he inferred that because of the fact that he was first approached by one of his superiors, also an employee of the company. Well, didn't he, look, he had a big job. That's correct. At that utility. Yes. And the person who was above him in rank talked to him, this is what he testified to, talked to him about how we've got to take some of the money in this company and we've got to give it to the people who are running the country. Right. This is Cambodia. That's correct. A poor country. Yes. Yeah, where we had all the massacres and everything else, right? That's correct, Your Honor. Okay, and then he went to the press with it, didn't he? He didn't go to the press with this. Well, the press got on the story. That's correct. Right, and there was a story in the local newspapers about this, about this corruption, right? About allegations regarding this corruption. Yeah, okay, allegations regarding the corruption. And then he got some phone calls, right? At one point he did receive. Yeah, and they were threatening his life. Yeah, there were three telephonic death threats. That's right, yeah, tapes of telephonic death threats, yeah. And it was the president, there's some circumstantial evidence that it was the executive director, the president of the company, who was responsible for the death threats. Isn't there evidence of that? That is what Petitioner assumes. Well, is there any evidence of that? Judge Pregerson's asking if there's evidence of that. You told me he inferred that. Is there any other evidence of it? There's no other evidence aside from his testimony, which the immigration judge did find credible. That was what he believed, or where he believed the threats were coming from. The judge didn't base her decision, however. I'm sorry, Judge, go ahead. Why isn't it reasonable to conclude that the death threats came from someone in this company that was looking for these ill-gotten gains? Where else is it reasonable to make a conclusion that they came from the top? The Petitioner did believe that the threats came from somebody within the organization. That is what he believes. They were the ones that were aware of his refusal to participate in this corruption scheme. Are you saying that's an unreasonable belief? No, I'm not saying that that's an unreasonable belief. But in this case, based on all of his interactions with the people within the organization, this was in line with the treatment he had received from them. I wanted to ask you a question about the organization, and I'm just not clear from this record. It's a public-private utility, if you will? Correct. It's a threat that comes from this organization, and I don't know the answer to it, and the IJ didn't deal with it either. Is a threat that comes from this organization a governmental threat? The judge seems to have assumed that these things came from the government, so I'm not sure you really need to convince us on that. I'm just trying to figure out what the relationship of this entity to the government is. It's a state-run electric company, and I think this is why the Petitioner found himself between a rock and a hard place, because on the one hand, he was essentially being asked to participate in corruption against the government, defrauding them of these funds, while at the same time being instructed to do so by somebody he supposed was a representative of the government because they were in a position of authority within this organization. Well, this is a government-owned company, right? According to the testimony, it's the only electric company in the whole country of Cambodia, right? Correct. And the government owns it. So I'm not clear on whether these people were the government being corrupt, because the country reports talk about widespread government corruption, or whether these people were trying to defraud or embezzle from the government. Either way, he didn't want to go along, and they are the government. I think he thought it was governmental corruption. Was the utility government owned? I thought it was privately owned. It was state-run. State-run but privately owned? State-run is what Petitioner stated. It was owned by the state. It wasn't privately owned, was it? Petitioner stated that it was state-run but privately owned. Yeah, that's what he said. This is what we believe. He said it was privately owned but the state ran it. I don't know what that means. That's why I was asking. That was the information that we have as well. Do we have any basis for knowing what that means? As you well know, in China they have all these companies, but they're all government-owned and run. I don't know. And we know that. Do we know that about the electrical? I can't say that with certainty. However, that is what we were led to believe, similar to the way companies are run in China. Essentially, the government does have control over most things, and while this may have been privately owned, it was controlled by the state. The same party that was in control at the time he fled the country, the CPP, they're still in power. They are still in power. That's correct. Should we let her take her time, reserve her time, and we'll listen to the government's argument? Thank you, Your Honors. You have two minutes. May I just ask you one question? Yes. Do you know what the current country reports show? The current country reports, as opposed to the ones that 2008 and 2009 that were submitted, have not changed. They haven't changed at all. They have not changed. Yeah. They discuss the identical situation that existed back then exists now. That's correct, Your Honor, yes. Okay. Thank you. Thank you. And the same people are in power. The same party is in power. Yes, Your Honor. All right. Thank you.  Thank you. Good morning, Your Honor. May it please the Court? Dan Goldman on behalf of the Attorney General. The government asks this Court to uphold the agency decision and deny the petition for review. At bottom, this case is about petitioner's failure to establish two things, past persecution, that is, harm rising to the level of persecution, and a well-founded fear of future persecution, that is. Before you go on, can I just, maybe we've engaged your colleague in a useless dialogue. There's no issue in this case. I take it that whatever threats came and demotions came, et cetera, came from a governmental source, so as to establish. So if you could establish the persecution, it would be on a protected ground. The only reason I'm hesitating, Your Honor, is that. . . The IJ made no findings that it wasn't. That's correct. So if we found that these rose to a level of persecution, then we'd have to send it back for further proceedings to determine whether it came from the government. That's correct, Your Honor. So we ought not really worry about that today. That's true, Your Honor. In order to make a case based on a whistleblower status, which is what this case is, there's two questions that have to be answered affirmatively. Number one, to establish whistleblower status. And number two, if the whistleblower status is established, the individual still has to meet all of the other requirements for asylum. Why is this a whistleblower case? Because he's refusing, according to petitioner's testimony, he's refusing. . . You're talking about a whistleblower as we would define it here, people who point the finger at others and call that to the attention of the government? We didn't do that here. It's the government that's corrupt. Are you arguing that the government there is not corrupt? No, Your Honor, I'm not, not at all. No, it is corrupt, isn't it? There's certainly plenty of evidence to support that. Yeah. No, I've been there. I've been to Nampon and those places. So could you go back to the. . . We've got. . . It was a while back. I'm sorry. Ninety-five. Not too long ago. We've got. . . Let's look at the evidence here and tell us why you think it doesn't rise to the level. We've got death threats. Yes, Your Honor. It seems serious. Although they only. . . I understand they only occur on one day. He's demoted, correct? Correct. And there's a third thing, is there not? Those were the two main contentions from petition, Your Honor, and to take them in turn, three death threats. Well, he was also accused of being a member, I guess, of the opposition party. That's true, Your Honor. Okay, so put those three things together. And to take them in turn, Your Honor, the three threats, they occurred over the course of one month. I think it was May of 2004. They were anonymous. They were made to his cell phone. The fact that they were anonymous undercuts. . . And I think your opponent, in their brief, quite candidly says the threats by themselves are not enough. We would agree. Okay, but there's also a demotion, and there's also accusations of membership in the opposition party, which I take it would hurt his status working in this industry. And they say the IJ didn't really consider all three of those together. If you isolate each of them, as you suggest, they might not be enough. But if you put them together, why aren't they enough? Your Honor, you'd have to get to a totality of the circumstances. I think the immigration judge properly looked first at each of those things individually but then did ultimately reach the conclusion that even taken cumulatively, those things did not amount in the totality of the circumstances to harm rising to the level of persecution with the job demotion. I think it's very important to note that what actually happened in this case was he was transferred. He wasn't fired. He didn't lose his salary. There's no evidence to show that his family was somehow put into poverty compared to the types of cases where this Court has found economic persecution, economic harm rising to the level of persecution. This case falls far short of that. I don't think it's economic harm. The demotion wasn't just pure economic harm. It was to remove him from the office where the corruption was going on. And there was some evidence that they believed that he was a member of the CFF, the Freedom Fighters, which was an opposition party that actually attempted a coup. I am not sure when that coup was in relation to his activities. 2010, I think it was the same year, wasn't it? 2010 would have been much later, Your Honor. When was the coup? 2000, so it was a decade later. But in this case, Your Honor, we can only evaluate, and the immigration judge can only evaluate the arguments that are put forward. The argument that was put forward was this was economic persecution, as well as, Your Honor's noting, asking for our consideration of the totality of the circumstances. I think looking at what evidence wasn't put forward here is also perhaps instructive because in considering what Petitioner could have brought forward, he could have brought forward a lot more evidence that gets to Your Honor's question about perhaps a demotion being some sort of change to his status, the inability or difficulty in finding a job. He didn't testify to all that. In fact, I think it's very important, he worked up literally until the day he left, and the evidence would indicate that he was getting paid until the day he left. That's Petitioner's testimony. He says, I worked one day, and I got on a plane to leave Cambodia the next day. He could have gone right back to work. So the evidence could have shown a lot more if it were there, and that's why this case ultimately comes down to Petitioner's failure to meet that burden, to show the evidence rising to the level. Well, maybe that was the fault of his lawyers. Or, Your Honor, I'm not sure what the implication of the question is. He's been represented by the same counsel throughout these proceedings. I know, I know. But it could also be simply a lack of evidence, and the evidence, we can only evaluate this case based on the evidence that's in front of us. Can I ask you a question about the evidence? I'm just trying to find a tip. Well, the evidence I've been talking about is in the record. Yes, Your Honor. Yeah, it's in the record. Temporarily, when did the accusations of membership in the opposition party come? I know when the death threats came, they were all on one day. I think they were one month, Your Honor, just to be fair. Within one month, I'm sorry. And then nothing recurred for some period of time. When was the accusation of membership? His testimony is not clear about that. That's why I'm asking. I believe it was earlier, Your Honor, but I would have to double-check. So what I'm asking is, is the IJ's finding that this all occurred at some point and then never recurred deal with each of the alleged instances of persecution, or does it only deal with the death threats? And I'll ask your opponent. Maybe your opponent can clarify that. I think specifically the immigration judge, the decision is focusing there on the threats because it is important to note that these three threats come and they know where this individual works. If they want to find him, they can find him. If the threats are to be taken that seriously, they know where he works. They put him in that job in Phnom Penh. So the threats come. He's able to avoid any further threats simply by discarding his phone. So that undercuts the seriousness both of the threats in terms of whether they rise to past persecution but also in evaluating the likelihood of future harm. In this case, it appears, and there was some discussion about this in the record, that the threats were aimed essentially to keep Petitioner quiet. As was noted earlier, he didn't go to the press. People were asking him questions. How long did he remain in Cambodia after the last threat? After the last threat? Yes. Several months, Your Honor. But when I say several months, you mean one or two? I believe it was two or three. Okay, so they were relatively recent when he left. They were, Your Honor, but I think that doesn't undercut the fact that if these threats were as serious as he would have this court believe, the individuals making those threats knew exactly where to find him. And three phone calls, he throws away his cell phone, no one bothers him, no one bothers his family after that. The threats, as was discussed in the record, may have been aimed simply to keep him quiet. Those threats may have silenced him, but they didn't persecute him because, as this Court's precedents have made clear, threats by themselves have to rise to almost a menacing level before they can be qualified as persecution. Even adding in the economic claim here, the demotion of the job, didn't lose employment. There's no evidence as to whether he could. Well, he says his testimony is he had to show himself at the office, but he didn't have any work to do. And that followed the accusation that he was a member of the CFF in 2002. And then the threats came in 2004. Yes, Your Honor. What's also important to note there is that, at first, he was told essentially show up and do nothing. But then they moved him to a different job. So he was getting, presumably, paid. Well, they demoted him. Was there any evidence he was getting paid? There is limited evidence as to that, Your Honor. But again, that's Petitioner's burden to show. If he's going to make a claim for economic persecution, he has to show, under this Court's precedent, severe economic harm, which he could have done. And I see my time has expired. If I can answer your question, he could have done that, if the evidence was there to support it, by showing a drop in salary, an inability to make ends meet, his family going into poverty. He didn't show any of that. And at some level, we're stuck with the evidence that this Court is stuck with, the evidence that's in the record. There's a lot of other evidence, as has been discussed, that could have come in that would have helped his claim. He didn't bring that evidence forward. And in the end, that's why this claim fails, not because he wasn't a whistleblower. As Your Honor noted earlier, the immigration judge never made that finding. The immigration judge simply said, you don't meet the other requirements for asylum, past persecution, well-founded fear of future persecution. And that's why this Court would urge this Court to deny the petition for rebuke. Before you sit down, can I ask you one question? Sure. Did the IJ, am I correct in remembering that the IJ did not make a lack of credibility finding based on the false statements made on entry? Correct, Your Honor. She said, I understand why you did that, and I'm not going to make. Okay. That's correct. It was found credible, but not persuasive.  All right. Thank you very much, counsel. Thank you, Your Honor. Ms. Gracia, you'll have two minutes. Thank you. What work does your client do in this country? At this time, I believe that he's engineering work, but I don't know exactly where he's employed at the time, at the moment. What did you say? He's an engineer by trade, by profession. Yeah. But at this time, I'm not clear on where he is employed. Well, when's the last time you talked to him? We've been speaking on and off the past few months in preparation of today, but mostly about what's transpired, not about what he's currently doing. How is he paying you? I'm not sure about how that's being handled. Okay. Okay. I'd like to first point out that Petitioner's claim is not based on an economic harm that he suffered or that he fears he's going to suffer. His claim was based on persecution and harm to his person, fear that something was going to happen to him while he was in Cambodia, and fear that if he returns to Cambodia, he will be harmed. I know that opposing counsel stated he continued to work until the day he left. In part, that was because he was afraid to ruffle any feathers or cause more attention to be brought upon him than he was already receiving. And so part of the company in keeping him employed was also a way for them to keep an eye on him to make sure that he was quiet, even though he was really not doing anything at work. As he testified, he was doing small tasks. It was mostly to help him. If your claim is only fear of physical harm, which is, of course, an important claim, why does the demotion make any difference then? And if it was a demotion. I don't mean to say just physical harm. I mean to say that to exclude for the most part the monetary harm that opposing counsel stated he had suffered. He was shamed and publicly demoted. His colleagues, his family, people in the media were aware that he was being accused of being a terrorist. As you had stated earlier, the Cambodian freedom fighters around 2003 had attempted a coup and being part of that organization at that time was essentially being accused of being a terrorist. So those were very strong claims and were significant in establishing a fear of harm in the petitioner. And there's no question that these death threats were made. There's no question that these death threats were made and petitioner believed that these death threats would be carried out. There were other people in similarly situated positions that had received death threats and were subsequently killed. This was, according to petitioner's testimony, common knowledge in Cambodia. Speaking out against the government was not looked lightly upon. In this case, while he hadn't spoken out, there was a fear that he would because he had a lot of information that could shed light on corruption within the government. His family remains in Cambodia? His family remains in Cambodia. That's correct, Your Honor. How does that bear on his claim? Are they safe in Cambodia? From what petitioner has told us, they appear to be living out their lives in as safe a manner as possible in that country. Aside from that, I think that him being removed from there has diminished the attention that they were receiving while he was living there. So I think that him being away from them actually enhances their safety. Does the record disclose whether he has a family here? He does not have a family here, Your Honor. And how's his wife? How's his wife? How is his wife? In Cambodia, I believe that she's okay. I don't have any other information about his wife, though. I apologize. All right. Thank you very much, Counsel. Thank you. Chor v. Lynch will be submitted.
judges: Pregerson, Wardlaw, Hurwitz